WILLIAM J. REARDON, Plaintiff Below, Plaintiff in Error, *v.* EXCHANGE FURNITURE STORE, INC., a corporation of the State of Delaware, Defendant Below, Defendant in Error.

*(November* 10, 1936.)

WOLCOTT, Chancellor, LAYTON, C. J., RICHARDS, RODNEY and SPEAKMAN, J. J., sitting.

*C. Edward Duffy* for Plaintiff in Error.

*Marvel, Morford, Ward and Logan* for Defendant in Error.

Supreme Court, No. 6, June Term, 1936.[1]

---

[1] For the proceedings in the Court below, see 7 *W. W. Harr.* (37 *Del.*) 321, 183 *A.* 330.

SPEAKMAN, J., delivering the opinion of the Court:

In this case the plaintiff in error contends that:

The relationship of the plaintiff in error with the defendant in error was that of an independent contractor, and therefore the plaintiff in error was an invitee upon the premises, for the purpose of doing the work for which he was engaged. The court is in full accord with this contention of the plaintiff in error, and the correctness thereof is conceded by the defendant in error.

The plaintiff in error next contends that:

The defendant in error owed to the plaintiff in error the duty to exercise ordinary care to render the premises reasonably safe for the purposes embraced within the invitation.

The court is also in full accord with this contention, and the defendant in error also concedes the correctness thereof.

The plaintiff in error next contends:

There is ample evidence to sustain a finding by the jury that the defendant in error failed to exercise ordinary care to render the premises reasonably safe for the purposes embraced in the invitation. The correctness of this contention is disputed by the defendant in error.

The plaintiff in error next contends that:

There is nothing in the record to disclose any contributory negligence on the part of the plaintiff in error, as a matter of law. The correctness of this contention is also disputed by the defendant in error.

The plaintiff in error next contends that:

The extent of the invitation to the plaintiff in error, together with the question of negligence of the parties, are matters that should have been submitted to and determined by a jury. The correctness of this contention is also disputed by the defendant in error.

The questions to be determined by this court are as follows:

1. Was the plaintiff in error, at the time he sustained his injuries, acting within the scope of his invitation?

2. If the plaintiff in error was acting within the scope of his invitation, was he injured by reason of the negligence of the defendant in error, without contributory negligence on his part?

3. If the plaintiff in error was not acting within the scope of his invitation, what duty did the defendant in error owe to the plaintiff in error?

4. Were the extent of the invitation to the plaintiff in error, and the question of the negligence of the parties, matters that should have been submitted to and determined by the jury?

The action of the court below in granting the motion for a non-suit was because it found in part that there was no proof that the defendant or any of its employees or agents had directed the plaintiff to take the old hopper down

into the cellar. That there was no proof whatever of any business relations between the plaintiff and defendant whereby the plaintiff could draw the conclusion that it was necessary for him to dispose of the hopper by taking it down the cellar. That before the plaintiff could recover he had to show the breach of some legal duty of the defendant toward him, and under the facts in the case such duty had not been shown.

Whether the plaintiff in error, at the time he sustained his injuries, was or was not acting within the scope of his invitation must of course be ascertained from the contract between the parties.

In the court below the plaintiff testified for the purpose of proving the terms of the contract, in part, as follows:

"Q. I ask you whether or not at or about the first day of June, 1934, you were engaged by the Exchange Furniture Store, 3d and Shipley Streets, doing any work for them?

"A. I was.

"Q. You were engaged by Mr. DePaulo?

"A. Mr. DePaulo, yes.

"Q. You were hired to take out the old hopper and put in a new one, for the sum of $12.00?

"A. Yes, sir.

"Q. Did Mr. DePaulo give you any instructions as to the manner in which you were to proceed to do the work?

"A. No, he did not.

"Q. (By the Court) Were you directed by any employee of the defendant to take that hopper down the cellar?

"A. No, I was not.

"Q. Did you receive any other orders or instructions from Mr. DePaulo with respect to the placing of that hopper?

"A. I did not.

"Q. You were merely told by him to take out the old hopper and put in a new one?

"A. Yes.

"Q. But nobody had ordered you, of course, to take that hopper down into the cellar?

"A. No, they hadn't ordered me to take it down there."

The only other evidence introduced by the plaintiff for the purpose of establishing the terms of the contract was that of Bruno E. DePaulo, who testified concerning the contract as follows:

"Q. Mr. DePaulo, are you an officer of Exchange Furniture Store, Inc.?

"A. Yes, president.

"Q. Did you employ Mr. Reardon to do certain work on or about the early part of June, around the 5th of June, did you employ Mr. Reardon?

"A. I did.

"Q. For whom was that work to be done?

"A. Exchange Furniture Store.

"Q. What was the work to be done at this time?

"A. To replace a broken hopper bowl.

"Q. What arrangements did you have with him? Was it by the hour, or contract price for the job?

"A. Contract price.

"Q. In the doing of that work Mr. DePaulo, did you reserve the right to dictate how he should do it, or did you tell him the manner in which he should do the work?

"A. I did not.

"Q. Now in doing that work was it a part of his job to dispose of the old hopper, that is to put it out of the way somewhere?

"A. It was.

"Q. Had you directed him as to where he was to put it?

"A. I did not.

"Q. You say that you didn't direct him as to where he should put it?

"A. I did not.

"Q. That was left to his judgment?

"A. That's right."

From such testimony it appears that there was no material difference between the parties to the contract respecting its language and terms.

█ Where the terms of a contract, whether oral or written, are established by proper evidence, it is for the court to declare the effect of such contract.

And it has been so held in this state with respect to written contracts. *Worth Steel Co. v. Lewis et al.*, 2 *W. W. Harr.* (32 *Del.*) 286, 122 *A.* 446; *Carroll v. Cohen et al.*, 5 *Boyce* (28 *Del.*) 233, 91 *A.* 1001.

After a discussion of the rule relating to the construction of written contracts it is stated in *Chamberlyn on Evidence*, § 136, that:

> "By parity of reasoning where the terms of an oral contract are undisputed its construction and effect are to be determined by the Court, as a matter of law. It is error for the Court to leave to the jury to decide what the parties meant by the use of entirely unambiguous language in the formation of a contract. 'If the language, being thus free from ambiguity, leaves the meaning of the parties in doubt, it is the duty of the court and not the jury to determine its legal effect.' If no definite meaning can be attached to such language, it is the duty of the court to so hold."

From the evidence it appears that the old hopper was to be disposed of by the plaintiff by putting it somewhere out of the way. The place of such disposal was neither specifically provided by the contract between the parties as established by the evidence, nor does it appear from the evidence that independent of the contract the defendant indicated either expressly or impliedly that the old hopper should be disposed of by putting it in the cellar. In fact,

it appears from the evidence that the defendant gave no directions as to its disposal. On the other hand it expressly appears from the testimony of the plaintiff himself that he selected the place for the disposal of the old hopper. He testified as follows:

"Q. The first time you went out to the loading platform to shut off the water, did you observe any place where this old hopper could be placed after being removed?

"A. No, I did not.

"Q. Did you observe any place when you went down the cellar?

"A. When I went in the cellar there was a place there to throw it out of the road, and that is the reason I was taking it down there.

"Q. (By the Court) But you weren't directed by any officer or employee of the defendant company to take it down the cellar?

"A. I was not."

When the plaintiff assumed the responsibility of disposing of the old hopper in a manner solely to be determined by him, this put out of the case all questions relating to the care which the defendant was bound to observe while it was being so disposed of, except to see that the plaintiff was not injured by reason of wanton, willful or other active negligence on the part of the defendant.

The defendant had no knowledge as to how or where the plaintiff would dispose of the old hopper, and therefore had no opportunity of knowing of the dangers which the plaintiff might encounter.

Under the circumstances it is clear that the court below was correct in its holding as a matter of law that the plaintiff was not acting within the scope of his invitation at the time of his injury. It would not have been proper to leave the determination of this question to the jury, as that would have required a construction of a contract by the jury,

where the language used by the parties was clear and free from any ambiguity.

The plaintiff having failed to show that his business under his contract necessarily took him to the place where he was injured, at the time that he suffered his injury, the owner of the premises would not be liable, in the absence of wanton, willful or other active negligence on his part, and there is no evidence of such negligence in the record.

The court is of the opinion that there is no error in the proceedings of the court below, and its judgment is, therefore, affirmed.