MARGARET H. MANLEY *v.* BERNARD H. HAUS.

February Term, 1943.

Present: MOULTON, C. J., SHERBURNE, BUTTLES, STURTEVANT and JEFFORDS, JJ.

Opinion filed May 4, 1943.

*A. Pearley Feen* and *Osmer C. Fitts* for the defendant.

*Edward C. Barry* for the plaintiff.

STURTEVANT, J. This is a tort action in which the plaintiff seeks to recover for personal injuries received while she was on the defendant's premises. The plaintiff had a verdict and judgment below and the case is here on the defendant's exceptions.

The defendant contends that his motion for a directed verdict and motion for judgment notwithstanding the verdict should have been granted, because:

1. There was no evidence from which the jury could reasonably find that the injuries received by the plaintiff resulted from any negligence chargeable against him.

2. The evidence does not show that the plaintiff was free from contributory negligence.

There is little, if any, dispute as to the material facts. From the evidence viewed in the light most favorable for the plaintiff the jury could reasonably find as follows.

On October 27, 1938, and for some time before that date the plaintiff's husband was engaged in the radio repair business at Brattleboro, Vermont. At all times here material the defendant was there engaged in an automobile sales and service business. The main entrance to the garage where this business was conducted was on the southerly side of Flat Street. There was also a side entrance on the westerly side of the garage building opening into a parking lot eighty feet square. This lot was used by the defendant in connection with his business. Entrance to this parking lot was also on the southerly side of Flat Street and one having business at the garage could enter and park his car on this lot. About six inches southerly from the south side of the westerly garage door there was a flight of stairs leading to the furnace room in the basement. This stair well was 16 feet, 9 inches long from north to south and 3 feet, 10 inches wide and about 6 feet, 10 inches deep. The easterly side of this well was about 1 foot from the westerly garage wall. There was a cement "lip" two or three inches high around this well to keep water from flowing into it. Otherwise the opening was unprotected excepting a hinged cover over the southerly one-third of it.

On the afternoon of October 27, 1938, the plaintiff's husband received word from the defendant requesting him to call at the garage and pick up a radio which was in one of defendant's cars

and which the defendant wished to have repaired. Manley told the defendant that he could not come for the radio until late in the afternoon and asked him to have one of his men take it out of the car so that he could get it quickly when he should call. Shortly before the garage closing time which was 6 o'clock P.M., Manley, accompanied by his wife, drove to the defendant's garage, entered the parking lot with his car lights on and parked facing east and with the front bumper about one foot westerly from the stair well. He turned off the car lights, got out and entered the garage through the westerly door. The plaintiff remained seated on the right side of the front seat in the car. It was then raining some and was "slightly misty and dark." Manley found that the radio had not been removed from the car and at once went back out to his car, told the plaintiff that he would have to remove the radio and asked her to come into the garage and hold a light so that he might see to do the work. He then went to the back of his car to get his tools, heard the right-hand door shut, picked up his tools and returned to the car in the garage expecting to find the plaintiff there. Not finding her he came back out, threw the light from his lantern around but did not find her. He returned to the garage, asked a workman if he had seen Mrs. Manley and learned that he had not. He continued to look for her and finally flashed his light in a way that showed him the well where the basement stairs were located. He found the plaintiff at the bottom where she had fallen when she attempted to walk from their car into the garage in response to his request to come in and hold the light for him. It was dark when the plaintiff got out of the Manley car on the right side and walked toward the front. She looked when she started, tried to go around the front end of the car to enter the garage and fell into the well. When found she was lying still and did not speak until a few minutes later. After Manley had put his wife in their car he went into the garage and alone removed the radio in about ten minutes. He knew that they had drop lights in the garage and felt free to ask for one to use but considered an electric lantern easier to handle. He did not attempt to find anyone when he first went in from whom he might ask permission to use a drop light. He had done more or less radio repair work for the defendant for about a year prior to the time in question and had called at the garage on various occasions in connection with that work. He did not see the stair well

when he parked his car and did not know about it until he found it by use of his electric lantern when he was searching for his wife. The plaintiff assisted her husband in his radio repair business and at various times called for and delivered radios for him, but had not before been to the defendant's garage on any matter connected with her husband's business. On the occasion in question she went along with her husband to be of assistance should her help be required. However, both she and her husband expected that the radio would be removed from the car when they reached the garage. She did not know that the stair well was there until she fell into it.

The defendant contends that on the occasion in question the plaintiff was on his premises as a mere volunteer or at most as a gratuitous licensee. The plaintiff insists that she was there as a business visitor.

In *Wool* v. *Larner*, 112 Vt 431, 26 A 2d 89, 92, we stated that: "It is evident that invitation in the technical sense, from which the duty of active care arises, differs from invitation in the ordinary sense, implying the relation of host and guest, or a mere license." To avoid confusion in the use of the terms "invitee" and "invitee in the technical sense," we have adopted the following definitions from the Restatement of Torts.

> "Sec. 330. A licensee is a person who is privileged to enter or remain upon land by virtue of the possessor's consent, whether given by invitation or permission."
>
> "Sec. 331. A gratuitous licensee is any licensee other than a business visitor as defined in sec. 332. This includes social guests."
>
> "Sec. 332. A business visitor is one who is invited or permitted to enter or remain on land in the possession of another for a purpose directly or indirectly connected with business dealings between them."

*Wool* v. *Larner,* 112 Vt at 435, 26 A 2d 89.

In this opinion the term "business visitor" is used in the sense that the term "invitee" is used in many of the cases cited.

The invitation required to qualify one as a business visitor on the premises of another may be either express or im-

plied. Such invitation is implied whenever one makes such use of another's premises or something found thereon as the owner intends he shall, or such as he is reasonably justified in understanding the owner intended. *Wool* v. *Larner,* 112 Vt 431, 436, 26 A 2d 89, and cases cited. The distinction between a visitor who is a mere licensee and one who is on the premises by invitation turns largely on the nature of the business that brings him there, rather than on the words or acts of the owner, which precede his coming. *Coburn* v. *Village of Swanton,* 95 Vt 320, 326, 115 A 153. To give a person the standing of a business visitor it must appear that his purpose for entering the premises is one of interest or advantage to the owner or occupant. *Coburn* v. *Village of Swanton,* 94 Vt 168, 172, 109 A 854, and cases cited. "The principle," says Mr. Campbell in his treatise on negligence, "appears to be that invitation is inferred where there is a common interest or mutual advantage, while a license is inferred where the object is the mere pleasure or benefit of the person using it." *Coburn* v. *Village of Swanton,* 94 Vt 168, 172, 109 A 854, and cases cited.

■ We agree with the defendant's contention that Manley, in performing the work of removing the radio from the car under the circumstances of this case, was an independent contractor. However, "it is not necessary to suggest that, where a proprietor engages an independent contractor to do work upon his premises, the contractor, while executing the work, will be there in pursuance of the invitation of the proprietor, and the proprietor will * * * be under the duty of exercising ordinary or reasonable care to the end of promoting his safety. In almost every such case there is the further implication that if the contractor brings third persons, his own employes, his partners, or assistants, to assist him in executing the contract, such persons are presumably upon the premises by the invitation of the owner, and he owes to them the same measure of care, to the end of promoting their safety, that he owes to the contractor himself; and this, although no contractual relation exists between the proprietor and them." Thompson on Negligence, Sec. 979; *Stevens* v. *United Gas & Electric Co.,* 73 NH 159, 60 A 848, 853, 70 LRA 119; *Richards* v. *Consolidated Lighting Co.,* 90 Vt 552, 556, 99 A 241, and cases cited.

The plaintiff was entering the garage for the purpose of assisting her husband to remove the radio. In that sense she was inter-

ested in the business to be done. Her entry was not for her personal pleasure or convenience. Neither was it for the purpose of making a tour of inspection or to satisfy her idle curiosity. The defendant had an interest in the removal of the radio because he had requested Manley to call and get it.

It follows from the foregoing that the jury could reasonably find from the evidence that the plaintiff was a business visitor on the defendant's premises at the time of her injury.

We are not here concerned with what may have been the plaintiff's status when she entered the defendant's parking lot in the car driven by her husband. It is her status at the time and place of her injury that controls and we have seen that the evidence justifies the finding of the jury that then and there she was a business visitor.

The defendant also contends that there is no evidence from which the jury could reasonably find the plaintiff free from contributory negligence. He introduced in evidence a copy of a weather report issued by the United States Weather Bureau showing that on the night in question the time of sun set at Burlington was 4:50 o'clock P.M. He insists that, therefore, we should take judicial notice that it was light enough for the plaintiff to have seen the pit and so avoided falling into it if she had been exercising due care. However, the defendant, in his brief in setting out the facts which the jury were justified in finding, referring to conditions as to light at the time of the accident, states as follows: "It was then raining 'slightly.' 'It was slightly misty and dark.'" The exact time of the accident does not appear. The evidence is that it happened "about 5:30, after five quite a bit" and "around closing time" which was six o'clock. The plaintiff stated that it was dark at the time and Manley testified that he did not see the well when searching for his wife until he happened to throw the light from his electric lantern upon it. Under these circumstances we cannot take judicial notice that it was light at the time in question. That the evidence as to whether it was dark was for the jury to consider is too clear to need further comment.

■ ■ It appears from what we have hereinbefore stated that the jury were justified in finding that the plaintiff at the time and place of the accident was a business visitor. If the manner in which the entrance way in question here was constructed and maintained

required that it be lighted in order to be reasonably safe for those rightfully using it then it was the duty of the defendant to so light it. *Wool* v. *Larner,* 112 Vt at 437, 26 A2d 89, and cases cited. He can not excuse himself from this duty by suggesting that the plaintiff might have discovered the well by turning on the lights of the Manley car before getting out. Neither does the defendant's failure to guard or light the well excuse the plaintiff from the exercise of due care for her own safety, but it is a circumstance to be taken into consideration in determining whether she exercised the requisite care or not, for negligence can not be imputed to one who is deceived by circumstances calculated to mislead a prudent man. *Lefebvre's Admr.* v. *Central Vt. Ry. Co.,* 97 Vt 342, 350, 123 A 211; *Boyden* v. *Fitchburg R. R. Co.,* 72 Vt 89, 93, 94, 47 A 409, and cases cited. It follows that the question of the plaintiff's contributory negligence was for the jury.

The defendant's claim that his motion for a judgment notwithstanding the verdict should have been granted is disposed of by what we have stated as to his motion for a directed verdict.

*Judgment affirmed.*

## ON MOTION FOR REARGUMENT.

STURTEVANT, J. The defendant has filed a motion for reargument of this case. He suggests that the conclusions reached in the opinion are contrary to the holdings in several cases cited in his brief. However, none of those cases deals with the status of one on premises at the request or direction of an independent contractor and under circumstances similar to those in this case. For that reason those cases are not material here. All questions saved have been considered and treated in the opinion. *Motion for reargument denied. Let full entry go down.*