ALFRED RHEAUME *v.* HARRY C. GOODRO.

October Term, 1943.

Present: MOULTON, C. J., SHERBURNE, BUTTLES, STURTEVANT and JEFFORDS, JJ.

Opinion filed November 2, 1943.

*A. Pearley Feen* and *Wayne C. Bosworth* for the defendant.

*Lawrence & O'Brien* and *John T. Conley* for the plaintiff.

MOULTON, C. J. The plaintiff received severe bodily injuries in the collapse of a large pile of sawdust at the defendant's saw

mill, and brought this action to recover damages. The verdict and judgment below were in his favor, and the cause is here on the defendant's exception to the denial of his motion for a directed verdict. The grounds of the motion were that, on the evidence taken in the light most favorable to the plaintiff, (1) the defendant was not guilty of any negligence proximately causing the accident, (2) the plaintiff was guilty of contributory negligence, and (3) the plaintiff assumed the risk.

The defendant owned and managed the mill. In the course of its operation, covering a period of years, a pile of sawdust, estimated to be at least 22 feet high, had been deposited outside the mill building, and the defendant sold sawdust to various customers who came to the mill yard and removed it. These daily sales averaged five truck loads of approximately 150 bushels each. The pile was originally conical in shape, but the removals had left its westerly side nearly perpendicular. The autumn rains had soaked into the sawdust and the ensuing frosts had frozen it so there was a hard crust about a foot in thickness at the top which extended down the sides. In weather warm enough to melt the frozen portion it would be liable to slide. The defendant was familiar with the appearance of the pile and the crust, and as an experienced mill operator knew of the effect of rain and frost upon it, and of the danger of sliding but took no precaution to examine the condition and did not warn the plaintiff concerning it. He was present at the mill on the morning of the accident.

The plaintiff came to the mill yard at about ten o'clock of the morning of January 28, 1942, along with his employer, Victor Bourdeau, in the latter's one and a half ton truck. The day was warm and it was thawing. The purpose was to obtain "clear" sawdust, that is, sawdust unmixed with shavings to be used in packing ice and the truck was placed at a distance 20 to 30 feet away from the main pile, at a place where there was clear sawdust, which had at one time formed the base of the pile but which had been left on the ground in the course of previous removals by other persons. The plaintiff had been there several times before, the last visit having been during the previous December and on each occasion had taken sawdust from the same place. Nothing about the pile attracted his attention. It appeared to be just as he had seen it before. He had had no previous trouble, and had no knowledge of

the dangerous condition caused by the changes in the weather. While he was engaged in bagging the sawdust standing at the back of the truck, the crust gave way and the pile slid down upon the plaintiff, throwing him against the truck and completely ·covering him, with resulting injuries.

About half an hour after the plaintiff and Bourdeau had come to the mill yard, and whilst they were engaged in loading the truck, Alfred Sabourin and his son arrived in a one-half ton truck, which was backed up to the pile about six feet to the north of Bourdeau's truck. The Sabourins filled 15 bags with sawdust, amounting to 30 bushels, from the base of the pile. Whilst Sabourin was standing on his truck putting the bags in place he noticed a crack in the pile some 2-½ inches wide which extended 20 or 30 feet down the side, and spoke to his son, in French, about it. The crack was on the other side of the pile from the Bourdeau truck and could not have been seen from the place where the plaintiff was working. Within five or ten minutes after Sabourin noticed the crack the pile fell and masses of frozen sawdust, some of them two feet square, slid down.

██ ██ The foregoing statement of the evidence, which has been taken in the most favorable light for the plaintiff, indicates that the issue of actionable negligence on the part of the defendant was for the jury. The plaintiff was a business visitor since he was impliedly invited upon the premises for the purpose directly connected with the business dealings between his employer, Bourdeau, and the defendant, and for their mutual benefit. Am. Law Inst. Restatement of Torts, sec. 332; *Cole* v. *North Danville Co-op. Creamery Assoc.,* 103 Vt 32, 39, 151 A 568; *Manley* v. *Haus,* 113 Vt, 217, 221, 32 A2d 668. The fact that he was an employee of the purchaser of the sawdust did not alter his status in this respect. See *Manley* v. *Haus, supra;* Restatement, Torts, sec. 332, comment g. It was the duty of the defendant to use reasonable care to keep the premises in a safe and suitable condition so that the plaintiff would not be unnecessarily or unreasonably exposed to danger, and if a hidden danger existed, known to the defendant, but unknown and not reasonably apparent to the plaintiff, to give warning of it to the latter, who had the right to assume that the premises, aside from the obvious dangers, were reasonably safe for the purpose for which he was upon them, and that proper precaution had been

taken to make them so. *Cole* v. *North Danville Co-op. Creamery Assoc., supra,* pp. 39-40, 151 A 568; *Dooley* v. *Economy Store, Inc.,* 109 Vt 138, 141, 194 A 375; 2 Restatement, Torts, paragraph 343, and comment *d.*

It is argued that the accident was proximately caused by the removal of sawdust by the Sabourins, which undermined the pile, causing an overhang of the crust which gave way and resulted in the slide. It is true that two of the employees of the defendant testified to seeing an overhang—one of them said that it was twelve feet in depth, the other that it was very small and did not exist an hour before the plaintiff came to the mill yard, and there was evidence that cracks would appear in such an overhang. But neither plaintiff nor Bourdeau observed an overhang, and the testimony of Sabourin was susceptible of being construed as meaning that he did not dig into the pile, but took sawdust lying at its base, as the plaintiff did. Furthermore the jury would have been justified in finding, from the testimony of one witness, that a crack was liable to form in the absence of an overhang.

It is claimed that the doctrine of *Landing* v. *Town of Fairlee,* 112 Vt 127, 22 A2d 179, is applicable. But in that case the evidence tended to show that the progressive excavation of a gravel pit by the plaintiff and his fellow workmen was the cause of the collapse of the bank. Here there is nothing to show that what the present plaintiff did had any effect in bringing about the fall of the sawdust pile.

The question of the plaintiff's contributory negligence was also one of fact. Whether under the circumstances the exercise of due care required him to make an examination of the condition of the pile was something for the jury to determine. See 2 Restatement, Torts, para. 343, comment d.

Where, as here, no contractual relationship such as that of master and servant existed between the parties, the doctrine of assumption of risk is applicable only where the injured party knew and appreciated the danger and of his own free will put himself in the way of it. There must be something more than mere knowledge of the danger in order to entitle the defendant to a directed verdict upon this ground; the evidence must be such as to make it conclusively to appear that the plaintiff encountered the risk freely and voluntarily with full knowledge of its nature and extent. *Cole*

v. *North Danville Co-op. Creamery Ass'n.*, 103 Vt 32-40, 151 A 568. Here the evidence afforded no sufficient basis for holding as a matter of law that the plaintiff knew and appreciated the risk and voluntarily chose to expose himself to it.

No error in the denial of the defendant's motion has been made to appear.

*Judgment affirmed.*