ANNE MAHER v. BARBARA VOSS and NORWOOD VOSS. WILLIS MAHER v. SAME.

*(Two Cases)*

(*August* 10, 1951.)

CAREY, J., sitting.

*Paul W. Rinard* for plaintiffs.

*Joseph Donald Craven* for defendants.

Superior Court for New Castle County, Nos. 996 and 997, Civil Action, 1950.

**CAREY, Judge:**

Two questions are presented: (1) was Mrs. Maher's status that of an invitee or licensee; (2) does the complaint show any actionable negligence? The present motion may, of course, be granted only if it appears to a certainty that the plaintiffs would not be entitled to relief under any state of facts which could be proved in support of the claim. *Berghane v. Radio Corporation of America*, (D. C.) 4 *F. R. D.* 446; 2 *Moore's Fed. Practice* (2d. ed.) 2245.

No Delaware case has been brought to my attention wherein our Court has undertaken to define, in general terms, the distinction between invitees and licensees. In *Reardon v. Exchange Furniture Store*, 7 *W. W. Harr.* 332, 188 *A.* 704, the Supreme Court held that a plumber, engaged to remove a broken hopper and install a new one in a store, was not acting within the

scope of his invitation when he took the old hopper into the cellar without the consent or knowledge of the property owner. His status as an invitee ceased and became that of a licensee or trespasser.

Plaintiffs suggest that the Court should adopt the categories and definitions set forth in Chapter 13, *Restatement, Torts, Negligence.* The authors of that work, recognizing the confusion of language which has arisen in the various opinions, have used the terms "business visitor" and "gratuitous licensee" to describe what most Courts call "invitee" and "licensee". For all practical purposes of this case, it is unnecessary to choose the name to be used. Under my view, Mrs. Maher was a licensee rather than an invitee, in the language of most Courts, or she was a gratuitous licensee rather than a business visitor, in the language of the *Restatement.* It is not suggested that any business or financial relationship existed. The nature of the functions and activities of the "Democratic Women of New Castle County" is not explained. From its name, I take it to consist of certain women in that County who are interested in promoting the objects and principles of the Democratic Party. It is not averred that either Mrs. Maher or Mrs. Voss had any other or greater interest in the meeting than this, or even that either of them had any hope or expectation of personal benefit from the Democratic Party. Moreover, it is not charged that the defendants received, or expected to receive, any consideration for the use of their home by the group.

The facts compel the conclusion that Mrs. Maher was simply a social guest. As such, by the great weight of authority, she was a licensee or gratuitous licensee, whichever term is preferred. *Restatement, Negligence,* 897; *Cosgrave v. Malstrom,* 127 *N. J. L.* 505, 23 *A.* 2d 288; *Biggs v. Bear,* 320 *Ill. App.* 597, 51 *N. E.* 2d 799, 92 *A. L. R.* 1002; *Lewis v. Dear,* 120 *N. J. L.* 244; 198 *A.* 887; *Comeau v. Comeau,* 285 *Mass.* 578, 189 *N. E.* 588; *Greenfield v. Miller,* 173 *Wis.* 184, 180 *N. W.* 834, 12 *A. L. R.*

982; *Goldberg v. Straus, Fla.*, 45 *So.* 2d 883; *Southcote v. Stanley*, 1 *H & N.* 247, 156 *Eng. Reprint* 1195; 38 *Am. Jur.* 778.

The only cases cited by plaintiffs on this point do not in fact conflict with this holding. They are the Vermont cases of *Wool v. Larner*, 112 *Vt.* 431, 26 *A.* 2d 89 and *Manley v. Haus*, 113 *Vt.* 217, 32 *A.* 2d 668. In both of them the definitions of the *Restatement* are accepted and adopted. As indicated above, that authority expressly places social guests in the category of gratuitous licensees. Moreover, the facts of the two cited cases materially differ from those of the present one. In the *Wool* case, the plaintiff was the guest of the *tenant* of an apartment in a building owned by the defendants and was injured in a driveway. The driveway was under the control of the defendants, but was used by all tenants. As to the *defendants* the plaintiff was held to be a business visitor. The Court gave no consideration to the relationship which exists between social guest and his host. Even less in point is the *Manley* case, where the plaintiff, wife of a radio repairman, went into defendant's garage with her husband to help him remove a radio which defendant had engaged him to get and repair. The wife was injured in the garage. She was held to be a business visitor.

In view of Mrs. Maher's status as a licensee, does the complaint charge any actionable negligence on the part of the defendants? *Reardon v. Exchange Furniture Store, supra,* is not very helpful in answering this question. It does state that the only duty that defendant owed to the plaintiff was to see that he was not injured by reason of wanton, willful or other active negligence on the part of the defendant. Just what is meant by "active negligence" is not entirely clear. Neither the trial Court nor the Supreme Court stated what Reardon's status became when he started down the cellar steps. It is, therefore, impossible to say whether the standard of care therein laid down is intended to apply only to trespassers or to licensees as well. Moreover, the Court had before it no problem of a trap or hidden danger since Reardon's fall was caused by some foreign

matter on a step. Likewise, the Court was not concerned with any failure to warn Reardon of a danger known to defendant, since the defendant had no reason to anticipate that Reardon would take the old hopper into the cellar. Clearly, the owner violated no duty it owed to him under the circumstances, whether he was trespasser or licensee, and the opinions of both Courts were naturally limited to a discussion of the problems presented by the circumstances.

A review of counsels' citations and of numerous other authorities demonstrates some apparent conflict in the decisions of other jurisdictions concerning the duty of a property owner towards a licensee. What may be called foreseeability of risk has no doubt played an important part in the result reached in most cases. The rules which probably meet widest approval are those summarized in the *Restatement*. No liability rests upon a possessor of land, even to a business visitor, for bodily injury caused by a dangerous condition on the land, if the visitor knows of the condition and realizes the risk involved. But the possessor is subject to liability to gratuitous licensees if, and only if, he (a) knows of the condition and realizes that it involves an unreasonable risk to the licensee and has reason to believe that they will not discover the condition or realize the risk and (b) invites or permits the guest to enter or remain upon the land without exercising reasonable care to make the condition reasonably safe or to warn them of the condition and the risk involved therein. The owner is not obliged to prepare a safe place for the licensee's use, but his duty is satisfied if he discloses the known condition of peril to the guest. The case of *Leech v. Husbands*, 4 *W. W. Harr.* 362, 152 *A.* 729, although not directly in point, is in harmony with this rule. I do not interpret the words of the Supreme Court in the *Reardon* case, *supra*, as intended to deny the existence of such a duty or to eliminate its breach as a basis of liability. The specific question was not involved in that case and is not even mentioned.

The complaints in these cases charge that defendants'

negligence consisted of a failure to warn Mrs. Maher of the true nature of the "closet", which is averred to be a grave hazard to one ignorant of its character, when defendants should have known that their guest might be entrapped by it. Under the rules stated above, it cannot be said that the complaints are so clearly defective in showing actionable negligence as to warrant a dismissal thereof.

Defendants' counsel suggests that no duty to warn arose here because they had no reason to anticipate that Mrs. Maher would encounter the risk, or, in other words, that the hosts had no reason to expect that the guest, although she had seen Mrs. Voss hang her coat in the "closet", would go to it of her own accord. But such an act under the circumstances, is not so unusual as to enable the Court to say, at this stage of the case, and as a matter of law, that it was beyond the realm of reasonable foreseeability.

Although counsel places some reliance upon the fact that Mrs. Maher, at the time of her fall, was apparently actually getting some one else's coat rather than her own, I consider it of no materiality in the determination of the present motion.

I am of the opinion that the motion to dismiss cannot be granted, for it does not appear to a certainty that the plaintiffs would not be entitled to recover under any state of facts which could be proved under the complaint. Whether or not the ultimate decision of the matter will prove to be a jury question will depend upon the nature of the defenses raised and the evidence presented.

The present motion will be denied.