### Rachel Robillard v. E. Harold Tillotson, d. b. a. Tillotson and Harran

[108 A2d 524]

May Term, 1954.

Present: **Sherburne, C. J., Jeffords, Cleary, Adams and Chase, JJ.**
Opinion Filed October 5, 1954.

*John A. Swainbank* for the plaintiff.

*Sterry R. Waterman* for the defendant.

**Adams, J.** This is an action to recover damages for personal injuries sustained by the plaintiff through the alleged negligence of the defendant. The plaintiff claims that she received the injuries when, without fault on her part, she fell into a grease pit on the filling station premises of the defendant.

At the close of the plaintiff's case, the defendant moved for a directed verdict in his favor upon the grounds, in substance that the evidence shows no actionable negligence on the part of the defendant; that the evidence fails to show that the defendant owed any duty whatsoever to the plaintiff of a business visitor or invitee character; that the evidence fails to show that the defendant failed in any duty that he owed the plaintiff and that the plaintiff was guilty of contributory negligence as a matter of law.

The court granted the motion on the ground that the plaintiff has not brought herself within the classification of a business visitor and that there is no evidence that the plaintiff was a business visitor on the premises. The case is here on exceptions allowed the plaintiff to this action of the court.

There is little dispute as to the material facts. Viewed in the light most favorable to the plaintiff they are as follows: The defendant owns and operates a gasoline service station located on the easterly side of Railroad Street in St. Johnsbury. It has a typical service station building equipped with an office, stock room and stalls for a service and repair shop with an overhang on the front of the building and two pumps between the building and the sidewalk with a double driveway for access to both sides of the pumps. The office and stock room are in the southerly part of the building. There are doors in the front of the building for access to the office and to the service stalls.

The double driveway enters the premises from Railroad St. from both the north and south and there is a driveway from the double driveway around the building in its rear. There is an open area about forty feet wide on the northerly part of the premises with room to park seven or eight cars. This area is used by customers to drive into for the purpose of stopping to come into the station and arranging for work to be done. In so doing they sometimes use the driveway in the rear and the public also use this driveway occasionally for the purpose of turning around. The open area is not used for parking cars as there is a public parking lot adjoining the defendant's premises on the north and the defendant tried to keep the open area clear. He takes cars to the public parking lot if they are to be left any length of time.

There is a grease pit parallel with and a few feet north of the station building. This pit is unguarded. Lights are installed at the gas pumps and on the overhang and there is a street light at the northwest corner of the station premises at the edge of the sidewalk. This light illuminates the grease pit unless a car is parked so near the pit as to block out the light rays. The lights from the pump and overhang illuminate the driveway but not the pit because of the shadow from the building.

There is a store known as Landry's Yard Goods Shop situated on the westerly side of Railroad St. opposite the southerly entrance driveway to the station premises.

The accident that resulted in the injuries to the plaintiff occurred at about 7:30 P. M. on November 17, 1951. The

lights were on at the station at that time. The plaintiff's husband with the plaintiff and their oldest daughter as passengers drove his automobile from their home to Railroad St. and to the Landry Shop where he let the plaintiff out so she could go into the shop to make a purchase and he was to come back there and pick her up after taking the daughter to Lafayette St. After going to Lafayette St. he drove back to Railroad St. but instead of going to the shop for the plaintiff he drove into the southerly entrance to the station premises, over the driveway in the rear and parked his auto in the open area north of the station building. He parked it headed toward Railroad St. and parallel with the grease pit and about ten feet north of it. There was another car parked almost in front of his and closer to the end of the pit and nearer the gas pumps. He left his auto, went into the station building office, purchased a treasury number lottery ticket from a man by the name of Eastman and then watched from inside the door to the office for the plaintiff to come out of Landry's. After she had completed her purchase, she came out to the sidewalk in front of the shop and looked around for her husband. He saw her come out and stand on the sidewalk and he then came out of the station door and from the steps in front of it he called to her to come over, the car was over there.

He waited for her to cross the street and then preceded her towards his auto. She walked through the space near the gas pumps and toward the other car that was parked near the pit. He then said "It is over here." She changed her direction, took a few steps, fell into the pit and was injured.

The plaintiff's husband had been buying lottery tickets of Eastman at the station once a week for about two years but on three or four occasions he had bought them from the defendant. He had driven around the driveway in the rear and parked quite a few times as he did on the evening in question. He was not a regular customer of the defendant at the station but had bought gas there three or four times. The defendant was not at the station on the night the plaintiff was injured. The plaintiff had accompanied her husband to the station four or five times but had always stayed in the car. There was no evidence where the car was parked, driven or stopped on these

occasions. Sometimes a man who was a customer at the station would take his wife down street and come back to the station and it was then not unusual for her to come back and get into the auto at the station. There was no evidence to show who Eastman was or that he was employed by the defendant or connected with the regular service station business.

The crucial question here is the status of the plaintiff. Was she a "business visitor?" Both parties have briefed the status of the plaintiff as affected by the fact that her husband came to the station as a customer for an illegal purpose; i.e. to purchase a lottery ticket. Under the circumstances here in regard to the plaintiff's presence on the premises, we think that the illegal purpose of the husband is immaterial. We will, therefore, for the purposes of this opinion only, assume that he was a "business visitor" when he entered the premises.

In *Wool* v. *Larner*, 112 Vt 431, 435, 26 A2d 89, 92, we adopted the definition of "business visitor" from the Restatement of Torts, §332 as follows: "A business visitor is one invited or permitted to enter or remain on land in possession of another for a purpose directly or indirectly connected with business dealings between them." *Manley* v. *Haus*, 113 Vt 217, 32 A2d 668; *McAdams* v. *Roberts, Inc.*, 117 Vt 309, 311, 91 A2d 706; *Johnstone* v. *Bushnell*, 118 Vt 162, 164, 102 A2d 334. The authors of the Restatement, recognizing the confusion of language which has arisen in the various opinions, have used the terms "business visitor" and "gratuitous licensee" to describe what most courts call "invitee" and "licensee". *Maher* v. *Voss, Del Super*, 84 A2d 527, 528; *Wool* v. *Larner, supra*; *McAdams* v. *Roberts, Inc., supra*; *Manley* v. *Haus, supra*. We, therefore, in this opinion use the term "business visitor" as the term "invitee" is used in many of the cases and authorities cited.

The invitation required to qualify one as a business visitor on the premises of another may be either express or implied. Such invitation is implied whenever one makes use of another's premises as the owner intended he shall, or such as he is reasonably justified in understanding the owner intended. *Johnstone* v. *Bushnell, supra*, 118 Vt at page 164, 102 A2d 334,

and cases cited; *Bottum's Admr.* v. *Hawks*, 84 Vt 370, 384, 79 A 858, 35 LRANS 440.

■ To give a person the standing of a business visitor it must appear that his purpose for entering the premises is one of interest or advantage to the occupant. "The principle," says Mr. Campbell in his treatise on negligence, "appears to be that invitation is inferred where there is a common interest or mutual advantage, while a license is inferred where the object is the mere pleasure of the person using it." *Coburn* v. *Village of Swanton*, 94 Vt 168, 172, 109 A 854, 856, 95 Vt 320, 325, 115 A 153; *Manley* v. *Haus, supra*, 113 Vt at page 221, 32 A2d 668; *Lucas* v. *Kelley*, 102 Vt 173, 176, 147 A 281; *Bottum's Admr.* v. *Hawks, supra*, 84 Vt at page 384, 79 A 858; 38 Am Jur, Negligence, §99, pp. 759-760; CJ Negligence, §221, p 813; 65 CJS Negligence, §32, pp. 483-484, §43[1], p. 508, §43[3] b, p. 511; 22 Words & Phrases 582-584; *Sheridan* v. *Ravn*, 91 Cal App 112, 204 P2d 644; *Brosman* v. *Koufman*, 294 Mass 495, 2 NE2d 441, 104 ALR 1177; *Cook* v. *177 Granite St.*, 95 NH 397, 64 A2d 327; *Shaw* v. *Piel*, 139 Me 57, 27 A2d 137.

■ A person on the premises by invitation may also become a licensee where he uses the premises for purposes or in ways other than those for which they were intended or to which his invitation extends or where he remains on the premises beyond a reasonable time after his invitation has expired. 65 CJS Negligence, §33, p. 490; *Hickman* v. *First National Bank of Great Falls*, 112 Mont 398, 117 P2d 275; *Napier* v. *First Congregational Church of Portland*, 157 Or 110, 70 P2d 43; *Coulombe* v. *Home Coal Co.*, 275 Mass 226, 175 NE 631.

■ An invitee who goes beyond the bounds of his invitation loses the status of invitee and the rights which accompany that status. 65 CJS Negligence §46, p. 535, note 35. An invitation to come upon premises for one purpose would not invite entry for all purposes. *Lavoie* v. *Nashua Gummed & Coated Paper Co.*, 75 NH 97, 105 A 4. An invitee must use the owner's premises in the usual, ordinary and customary way. *Bird* v. *Clover-Leaf Harris Dairy*, 102 Utah 330, 125 P2d 797. The duty to an invitee as such is only co-extensive with the invitation and when the limits of the invitation are exceeded

300

the duty ceases. *Pierce* v. *Whitcomb*, 48 Vt 127, 132; *Gavin, Admr.* v. *O'Connor*, 99 NJL 162, 122 A 842, 30 ALR 1383; *Wilkinson* v. *Webb Carter Shoe Co.*, 57 SD 458, 233 NW 291.

■ One on premises by invitation of a licensee has no greater rights than the licensee. *Colbert* v. *Ricker*, 314 Mass. 138, 49 NE2d 459, 147 ALR 647, Anno. 651. ·

Applying the foregoing principles to the evidence in the instant case, it is apparent that the jury acting reasonably could not have found that the plaintiff was a business visitor in her own right. Her presence on the premises at the express invitation of her husband under the circumstances here was not of common interest or mutual advantage to the defendant. There was no such interest or advantage to justify her entry. *Coburn* v. *Village of Swanton, supra*; *Manley* v. *Haus, supra*. She entered the premises at the express invitation of her husband. His business for which he entered the premises had been completed. He had only to proceed to his auto, leave the premises and pick up the plaintiff at the dress shop as agreed. His use of the premises in waiting and watching for the plaintiff to come from the dress shop was other than the purpose for which he was on the premises as a business visitor. The defendant owed him no duty to provide a place for that additional purpose and he became, at most, a mere licensee. The rights of the plaintiff stemming from his invitation were no greater than his rights.

There was nothing in the evidence from which the jury acting reasonably could find that any conduct of the defendant was the original and efficient cause that induced the plaintiff's husband to do as he did and request the plaintiff to cross the street and go to the automobile. If he had done as originally planned he would, without doubt, have been at the shop ready for her when she came out. Nor could the jury acting reasonably find that any conduct of the defendant was the original and efficient cause that induced the plaintiff to answer the request of her husband, cross the street and follow his directions toward the automobile.

The plaintiff claims that she was a business visitor as defined in Restatement of Torts, §332, wherein under comment

"d" it is stated: "It is not necessary that the visitor should himself be upon the land for the purpose of the possessor's business. It may be for the convenience or arise out of the necessities of others who are themselves upon the land for such a purpose." The illustrations there given apply to persons who go to a hotel to pay social calls upon guests or to a railway station to meet passengers or to bid them farewell or to a child taken by its mother or a nurse to a store. None of these illustrations apply to the instant case. The place where the automobile was parked was not a public parking lot, nor was the plaintiff attempting to use a facility at the service station that was there for the use of the public. It was not a public place like a hotel or railway station. The plaintiff was not a child nor did she accompany her husband when he went to the premises. The cases are not uniform when a child accompanies its parent.

The plaintiff also claims that she was a business visitor because the defendant expected his customers to park on the premises north of the station and have them meet their friends and relatives there and to enter motor vehicles parked there. It is sufficient to say that the transcript reference given us by the plaintiff in this connection does not show any evidence from which the jury acting reasonably could find that fact.

The plaintiff relies strongly upon the case of *Pope* v. *Willow Garages*, 274 Mass 440, 174 NE 727. In that case one Steinbeck kept his car in the defendant's garage and he invited the plaintiff to come to the garage and wait for him. Steinbeck had been told, however, when he made his contract for keeping his car at the garage that he could have anyone he wished to do so call and wait for him in the garage or office. It was held that Steinbeck was an invitee and that the plaintiff on the facts was an invitee through him. That case is distinguishable and is not in point on the facts here. The case of *Davis* v. *Ferris*, 29 App Div 623, 53 NYS 571, also cited and relied upon by the plaintiff is not in point on its facts. There the husband of the plaintiff went to a lumber yard to purchase some lumber, one piece being for his wife to use for a particular purpose. He then requested his wife to come to the yard to inspect and approve the piece that was for her own use. She came and while

there was injured.   On those facts it was held that she was an nvitee.

If we attempted to distinguish each case cited by the plaintiff it would unnecessarily prolong this opinion.   It is sufficient to say that they are so different from the facts in the instant case that they are not in point.

The plaintiff says in her brief that if she was not a business visitor, she was a gratuitous licensee and she has devoted one paragraph of her brief to her status as such.   The question is not properly briefed.   However, the record shows that the case was tried below by the plaintiff upon the theory that she was a business visitor and the motion of the defendant for a directed verdict raised the question of her status as such and the motion was granted upon the ground that she was not a business visitor.   A question not raised below is not for consideration here.   Neither may a trial court be put in error on a point not made below.   *Preston* v. *Montgomery Ward*, 112 Vt 295, 298, 23 A2d 534; *Abel's Inc.* v. *Newton*, 116 Vt 272, 275, 74 A2d 481, and cases cited; *Campbell* v. *Howard National Bank*, 118 Vt 182, 188, 103 A2d 96, and cases cited.

*The exceptions of the plaintiff are not sustained.   Judgment affirmed.*