**UNPUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

GARY L. BASS; PHYLLIS BASS,
<u>Plaintiffs-Appellees,</u>

v.

HARDEE'S FOOD SYSTEMS,
INCORPORATED,
<u>Defendant-Appellant.</u>

No. 98-2025

Appeal from the United States District Court
for the District of Maryland, at Greenbelt.
Alexander Williams, Jr., District Judge.
(CA-97-657-AW)

Argued: April 7, 1999

Decided: August 9, 2000

Before WIDENER, MURNAGHAN, and WILKINS, Circuit Judges.

_____

Affirmed by unpublished per curiam opinion.

_____

**COUNSEL**

**ARGUED:** Joel D. Newport, SEMMES, BOWEN & SEMMES,
Towson, Maryland, for Appellant. Gary Allen Stein, MARGOLIUS,
MALLIOS, DAVIS, RIDER & TOMAR, L.L.P., Washington, D.C.,
for Appellees. **ON BRIEF:** Lori L. Blair, SEMMES, BOWEN &
SEMMES, Towson, Maryland, for Appellant.

_____

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

_____

**OPINION**

PER CURIAM:

Hardee's Food Systems, Incorporated (Hardee's) appeals a judgment against it in a premises liability action brought by Gary and Phyllis Bass.**1** Finding no error, we affirm.

I.

The evidence, viewed in the light most favorable to Bass, establishes the following. On January 20, 1996, the night of Bass' accident, Bass drove with his former wife Judy and their daughter Brittany to Roy Rogers, a fast-food restaurant in Annapolis, Maryland owned by Hardee's. Bass intended to purchase some food for Brittany. When they arrived at the restaurant, it was nearly 6:30 p.m. There had been 22 inches of snow on the ground on January 9, but during the days that followed, the snow had begun to melt. Temperatures had ranged between 22 and 52 degrees during the week preceding the accident. There had been substantial rain on January 19, further melting the snow. On January 20, the temperature had been as high as 52 degrees, dropping down to 30 degrees by 5:00 p.m. An inch and a half of measurable snow remained in untreated areas.

The only snow observed by Bass was plowed up against a fence at the perimeter of the lot. Bass parked at the edge of the lot, and he and his daughter entered the restaurant. Bass noticed no ice in the parking lot. After Bass and Brittany made their purchase, Brittany returned to the car while Bass walked across the Roy Rogers parking lot to a neighboring "mini-mart" to buy a bottle of soda for Judy. After buying the soda, which took 1-3 minutes, Bass returned to the Roy Rogers parking lot, which was dark. While walking through the

_____

**1** For ease of reference, we refer to this action as having been prosecuted solely by Gary Bass (Bass).

lot toward his car, Bass slipped and fell on a patch of clear ice that he had not seen prior to his falling. When he fell, the soda bottle shattered, and a piece of glass entered his eye, eventually causing Bass to lose the eye. Bass brought suit against Hardee's under a theory of premises liability.

At trial, Bass' expert in the fields of forensic architecture and premises safety, Lawrence Dinoff, testified that the asphalt in the Roy Rogers parking lot had deteriorated and there was a long, distinctive crack at the site where Bass fell. Additionally, the lot sloped toward that area. Dinoff concluded that, over a period of several years, runoff from melting snow from the restaurant roof and the sloped parking lot had been channeled directly into the crack and flowed to the road. This runoff facilitated further deterioration of the asphalt, thereby slowing the water flow and enhancing the opportunity for ice formation.

Dinoff explained that the conditions of the lot, when combined with the facts that (1) there was snow piled at the edges of the parking lot, (2) there was runoff from the roof, and (3) there had been a big rain the day before, necessitated that Hardee's take precautions to prevent ice from forming in the lot. He testified that Hardee's should have done one of the following: (1) slope the lot more safely and channel the roof-runoff underground, (2) repair the deteriorated asphalt, or (3) apply anti-freezing chemical pellets, particularly to areas where ice formation was most probable.

At the close of the evidence, the district court ruled as a matter of law that Bass was an invitee of Hardee's at the time of the fall. The court also denied a motion by Hardee's for judgment as a matter of law, see Fed. R. Civ. P. 50(a), concluding that Bass had created a jury question regarding whether Hardee's breached the duty of ordinary care owed to its invitee. The district court refused to submit the issue of contributory negligence to the jury, determining that there was no evidence that could support a reasonable inference that Bass was contributorily negligent. After deliberating, the jury returned a verdict for Bass for $1,080,000. Hardee's filed a post-trial motion to conform the verdict to Maryland's statutory cap on non-economic damages in personal injury actions. See Md. Code Ann., Cts. & Jud. Proc. § 11-108

3

(1998). The district court subsequently entered judgment in the amount of $595,000 in conformance with the statutory cap.

## II.

On Bass' motion, the district court sequestered witness Homer Henry, who had been the manager of the Roy Rogers at the time of the accident but was no longer employed by Hardee's at the time of the trial. See Fed. R. Evid. 615. Hardee's contends that the district court erred in refusing to allow Henry to remain in the courtroom. We disagree.

The sequestration of witnesses is governed by Federal Rule of Evidence 615, which states, "At the request of a party the court shall order witnesses excluded so that they cannot hear the testimony of other witnesses, and it may make the order of its own motion." Fed. R. Evid. 615. The rule does not authorize the exclusion of, inter alia, "a person whose presence is shown by a party to be essential to the presentation of the party's cause." Id. Because Rule 615 plays an important truth-seeking role, it carries a presumption favoring sequestration. See United States v. Farnham, 791 F.2d 331, 335 (4th Cir. 1986). Therefore, we construe the exceptions to the rule "narrowly in favor of the party requesting sequestration." Id.

In support of its contention that Henry was improperly excluded from the trial, Hardee's claims that Henry's presence was essential to its case. Hardee's maintains that it wanted Henry to be in the courtroom during the trial to avoid having an empty chair at counsel's table and because it would have been helpful to Hardee's' counsel to have been able to confer with Henry during the trial. However, in order for the exception to apply, Hardee's must demonstrate why Henry's presence was "essential, rather than simply desirable." Opus 3 Ltd. v. Heritage Park, Inc., 91 F.3d 625, 629 (4th Cir. 1996) (internal quotation marks omitted). Hardee's reasons fail to meet that standard.[2] Accordingly, the district court did not err in sequestering Henry.[3]

_____

[2] An example of a witness whose presence in the courtroom might qualify as "essential" is an expert who will be called upon to render an opinion based on the testimony presented during the trial. See id.

[3] Rule 615 also does not authorize exclusion of "an officer or employee of a party which is not a natural person" if the party's attorney designates

4

III.

Hardee's also argues that the district court erred in determining as a matter of law that Bass was an invitee rather than a licensee at the time of his fall. We review legal conclusions of the district court de novo. See Hendricks v. Central Reserve Life Ins. Co., 39 F.3d 507, 512 (4th Cir. 1994).

In this diversity action, we are called upon to predict what the Maryland Court of Appeals would decide were the issue presented to it. See Doe v. Doe, 973 F.2d 237, 240 (4th Cir. 1992). Under Maryland law, "[a] bare licensee is one who enters upon property, not as a social guest, but for his or her own convenience or purpose and with the landowner's consent." Wagner v. Doehring , 553 A.2d 684, 686-87 (Md. 1989). An invitee, on the other hand, is "one invited or permitted to enter or remain . . . for a purpose directly or indirectly connected with business dealings between them." Crown Cork & Seal Co. v. Kane, 131 A.2d 470, 472 (Md. 1957) (alteration in original) (internal quotation marks omitted). Invitee status may be proven in two ways: (1) by a showing of "mutual benefit," or (2) by proof of an "implied invitation." Wells v. Polland , 708 A.2d 34, 40 (Md. Ct. Spec. App. 1998). "[A] visitor's legal status is not static but may shift with passage of time, change in location, or change in use." Howard County Bd. of Educ. v. Cheyne, 636 A.2d 22, 30 (Md. Ct. Spec. App. 1994). Accordingly, a person can lose his invitee status when he remains on the premises beyond a reasonable time after the invitation has expired. See Levine v. Miller, 145 A.2d 418, 421 (Md. 1958).

We agree with the district court that under Maryland law Bass was an invitee at the time he was injured. He clearly was benefitting Roy Rogers when the accident occurred by providing transportation for his

_____

that officer or employee as the party's representative. Fed. R. Evid. 615. Hardee's argues that because Henry was a former employee at the time of trial, he was an "employee" of Hardee's within the meaning of the rule and therefore could be designated as Hardee's' representative. Because exceptions to the rule should be narrowly construed, however, see Farnham, 791 F.2d at 335, we decline to extend the class of "employees" to include former employees.

5

daughter to and from the restaurant. See Restatement (Second) of Torts § 332 cmt. g (1965) (explaining that a person may have invitee status when his presence on the property arises out of the convenience or necessities of others who are on the property for a business purpose); W. Page Keeton et al., Prosser and Keeton on the Law of Torts § 61, at 424 (5th ed. 1984) (explaining that the scope of an invitation by a business to a customer generally extends not only to the customer's transaction of business but also to his safe departure).

Hardee's suggests that the Maryland Court of Appeals would not afford Bass invitee status, but would instead follow the case of Robillard v. Tillotson, 108 A.2d 524 (Vt. 1954). Even if the Maryland Court of Appeals were persuaded of the correctness of the analysis in Robillard, the case at bar is readily distinguishable. In Robillard, a man drove his wife to a shop, intending to return for her after dropping their daughter off at another location. See Robillard, 108 A.2d at 526. After transporting his daughter, however, the man drove to a service station across the street from the shop and parked in an area not generally used for parking. See id. He entered and purchased a lottery ticket, then waited inside and watched for his wife to emerge from the shop. See id. When she exited the shop, he signaled to her and directed that she walk toward his car. See id. As she approached his car, she fell in a grease pit on the service station property and was injured. See id. The Supreme Court of Vermont held that the woman was not an invitee of the service station, reasoning that she was not benefitting the gas station by her presence there and was present only at her husband's invitation. See id. at 528. Her husband's business at the service station had been completed and his use of the station as a place to watch for, and eventually meet, his wife transferred his status from an invitee to, at most, a licensee. See id. Because the court held that the wife's status could be no greater than her husband's since the wife was on the property only by virtue of her husband's invitation, the court held she was not an invitee when she was injured. See id.

Here, unlike in Robillard, the momentary duration of Bass' daughter's delay in leaving the premises of the business she was patronizing was insufficient to extinguish her invitee status and therefore that of her father, who was accompanying her. See Restatement (Second) of Torts § 332 cmt. l (explaining that an invitee retains his invitee status

6

until "after the expiration of a reasonable time within which to accomplish the purpose for which he is invited to enter"). Moreover, another crucial distinction between Robillard and the present case is that here the plaintiff was injured while facilitating--by providing transportation for his daughter--a third party's business with the defendant, while in Robillard, the plaintiff had no business with the defendant, was injured on the defendant's premises after a third party had concluded his business, and in no way facilitated the third party's business with the defendant. For both of these reasons, we conclude that the Maryland Court of Appeals would not follow Robillard here and that the district court correctly determined that Bass was an invitee at the time of the accident.

IV.

Hardee's next contends that the district court erred in denying its motion for judgment as a matter of law, maintaining that the evidence was insufficient to support a reasonable inference that Hardee's had constructive notice of the danger that caused Bass' injury. We disagree.

An owner or occupier of property owes an ordinary duty of care to its invitees, which includes the obligation to maintain the property in a reasonably safe condition. See Lloyd v. Bowles, 273 A.2d 193, 195-96 (Md. 1971). Accordingly, a proprietor is liable to his invitees for injuries caused by an unreasonably dangerous latent condition on the land when the proprietor knew or should have known of the condition and should have either exercised reasonable care to make the condition reasonably safe or given an adequate warning of the condition. See Rawls v. Hochschild, Kohn & Co., 113 A.2d 405, 407 (Md. 1955).

A motion for judgment as a matter of law should be granted if the district court determines that the nonmoving party "has been fully heard . . . and there is no legally sufficient evidentiary basis for a reasonable jury to find for that party." Fed. R. Civ. P. 50(a)(1). We review the denial of a Rule 50(a) motion de novo, viewing the facts in the light most favorable to the nonmoving party. See Chaudhry v. Gallerizzo, 174 F.3d 394, 404-05 (4th Cir.), cert. denied, 120 S. Ct. 215 (1999).

7

Here, Bass' expert testified regarding the danger that existed in sub-freezing weather from the numerous sources of water in the parking lot on the day of the fall: roof runoff, melting snow piled at the perimeter of the lot, and the hard rain from the day before. He further testified that Roy Rogers should have discovered this unreasonably dangerous condition and taken measures to make the lot reasonably safe by at least placing a de-icing chemical on the ground, particularly on the areas that were most likely to gather water. [4] Because we conclude that a reasonable jury could have accepted the expert's opinion, we hold that the district court correctly denied Hardee's' motion for judgment as a matter of law.[5]

V.

Hardee's finally argues that the district court erred in refusing to instruct the jury regarding contributory negligence. We disagree.

_____

[4] Hardee's maintains that Bass failed to show that the ice had been on the ground long enough for a reasonable premises occupier to have discovered it. However, the length of time that the ice was actually on the ground is immaterial to Bass' claim. See Honolulu Ltd. v. Cain, 224 A.2d 433, 437 (Md. 1966) (explaining that because owner of shopping center knew of circumstances that favored ice formation in its parking lot, it had a duty to take reasonable measures to protect its customers from slipping, and the fact that ice formed only a short time prior to the plaintiff's fall was immaterial).

[5] Hardee's argues that Dinoff testified that "only his specialized knowledge, training, and expertise allowed him to ascertain the nature and existence of the defect," Appellant's Opening Brief at 28, and therefore that the dangerous condition was not one that would be discovered by a reasonably prudent occupier of the premises. Our review of the record, however, discloses that Dinoff did not testify that only his expert qualifications allowed him to discover the danger. See J.A. 96 (stating that "anybody who looks at the physical conditions would understand everything I've explained and wouldn't need for someone to slip" to notice the danger that existed). Hardee's further argues that Dinoff's testimony does not satisfy the Daubert requirements and therefore was improperly admitted. See Daubert v. Merrell Dow Pharms., Inc., 509 U.S. 579, 592-95 (1993). Because Hardee's raised this issue for the first time in its reply brief, we decline to address it. See Cavallo v. Star Enter., 100 F.3d 1150, 1152 n.2 (4th Cir. 1996).

8

The standard to be applied in measuring contributory negligence is that of an ordinarily prudent person under the same or similar circumstances. See Sanders v. Williams, 120 A.2d 397, 398 (Md. 1956). A refusal to give a contributory negligence instruction is appropriate if, considering the evidence in the light most favorable to the defendant, no reasonable fact finder could find contributory negligence. See Menish v. Polinger Co., 356 A.2d 233, 238 (Md. 1976).

Here, Hardee's has pointed to no evidence from which a reasonable jury could have concluded that Bass was contributorily negligent in failing to discover the ice on the property. Hardee's argues only that if it can be charged with constructive knowledge of the dangerous condition, then Bass can as well. However, the proposition that the duty of premises occupiers to discover latent dangers on the property is the same as the duty of customers to discover those dangers is simply incorrect. The very nature of a latent danger is that it is one that the premises occupier "should expect that invitees will not discover." Honolulu Ltd. v. Cain, 224 A.2d 433, 436 (Md. 1966). The district court was correct not to submit the issue of contributory negligence to the jury.

VI.

In sum, we conclude that the district court did not err in sequestering Henry, determining that Bass was an invitee at the time of his fall, denying Hardee's' motion for judgment as a matter of law, or refusing to instruct the jury regarding contributory negligence. Accordingly, the judgment against Hardee's is affirmed.

AFFIRMED

9