2014 VT 78

## Rodney W. Demag v. Better Power Equipment, Inc.

[102 A.3d 1101]

No. 13-120

Present: Reiber, C.J., Dooley, Skoglund and Robinson, JJ., and Eaton, Supr. J., Specially Assigned

Opinion Filed July 18, 2014

*R. Jeffrey Behm, Jon T. Alexander* and *Eric S. Miller* of *Sheehey Furlong & Behm P.C.*, Burlington, for Plaintiff-Appellant.

*Robin Ober Cooley* of *Pierson Wadhams Quinn Yates & Coffrin, LLP*, Burlington, for Defendant-Appellee.

¶ 1. **Dooley, J.** Plaintiff Rodney Demag appeals a summary judgment decision of the superior court against him in this personal injury case. Consistent with our current negligence law, the trial court found that plaintiff was a licensee of defendant, Better Power Equipment, Inc. (BPE), rather than an invitee. It then concluded that plaintiff was entitled to a lesser standard of care from BPE, which allowed for summary judgment against him. We determine that the time has come to abolish Vermont's common-law negligence distinction between licensees and invitees and reverse and remand.

¶ 2. As found by the trial court, the undisputed facts are as follows. Plaintiff worked for a car dealership which also provided automobile service. As a convenience for customers, he picked up vehicles belonging to customers, leaving his own vehicle and returning the customer's vehicle at the end of the day. Plaintiff provided this service to BPE's general manager and his wife,

picking up their cars from BPE's parking lot. This occurred five to six times a year. The arrangement had existed for approximately ten years.

¶ 3. In January 2009, plaintiff drove to BPE for the scheduled service, parking in his usual spot next to the vehicle of the general manager and his wife. Although this area was not generally used for parking by BPE customers, the general manager and his wife typically parked there, and other employees sometimes parked there in the winter. Plaintiff spoke briefly with the general manager about the service needed for his vehicle. Plaintiff then returned to his own vehicle, retrieved a few items, took a step and fell into an uncovered storm drain. He filed this case to recover damages for the injuries he suffered as a result of that fall.

¶ 4. Under the terms of its lease, BPE is responsible for maintaining all buildings and surface areas of the premises. The parties agree that BPE and its employees were not aware that the storm drain was uncovered until plaintiff fell into it. Recent snowfall had obscured the drain so that its opening was not obvious, although a BPE employee had plowed the area around the drain the day before plaintiff's fall. The general manager, who had worked for BPE for twenty-five years, stated in a deposition that the storm drain cover had never come off before. However, he

> had noticed that the cover rocked in place when he drove over it, and that there was some minor deterioration in the raised concrete ring around the storm drain cover. . . . In his opinion, the cover had heaved and tilted above its proper position due to frost, and the snowplow blade caught it and dislodged it.

The storm drain cover was found buried in the snow bank three or four feet past the storm drain.

¶ 5. The president and sole shareholder of BPE knew that the general manager and his wife often parked near the storm drain and knew of their arrangement with plaintiff to pick up and service their vehicles. The president and plaintiff had exchanged friendly conversation over the years. In the last two years, plaintiff and the president had seriously discussed the possibility of plaintiff purchasing a tractor and generator from BPE. Although he did not discuss it with anyone at BPE that day,

plaintiff claims he was still actively considering this purchase on the day of his injury.

¶ 6. ■ "Common law negligence has four elements: a legal duty owed by defendant to plaintiff, a breach of that duty, actual injury to the plaintiff, and a causal link between the breach and the injury." *Zukatis v. Perry*, 165 Vt. 298, 301, 682 A.2d 964, 966 (1996). As the trial court correctly found here, plaintiff's negligence claim against BPE hinges initially on the nature of the duty BPE owed him. The existence of a duty "is primarily a question of law." *Endres v. Endres*, 2008 VT 124, ¶ 11, 185 Vt. 63, 968 A.2d 336.

¶ 7. The trial court correctly noted that under our traditional common-law approach to landowner liability, the landowner's duty to an entrant on his or her land depends on whether the entrant is an invitee, a licensee, or a trespasser. The trial court found that plaintiff was a licensee at the time of his injury. Based on that determination, the trial court granted summary judgment to BPE and, citing to the Restatement (Second) of Torts § 342 cmt. c (1965), determined that a landowner did not owe a duty of ordinary care to a licensee and, as a result, had no duty to "inspect the land to discover possible or even probable dangers."

¶ 8. Plaintiff contends that the trial court should have found that he was an invitee rather than a licensee, and that BPE therefore owed him a duty of reasonable care. Under such a duty, he argues that there was sufficient evidence of BPE's negligence for the case to reach the jury.[1] In the alternative, plaintiff argues that this Court should hold that all lawful visitors to business premises should be entitled to a duty of reasonable care.

¶ 9. We review summary judgment rulings de novo, using the same standard as the trial court. *Farnham v. Inland Sea Resort Props., Inc.*, 2003 VT 23, ¶ 6, 175 Vt. 500, 824 A.2d 554 (mem.). "Summary judgment is appropriate only where, accepting the allegations of the nonmoving party as true, there exist no genuine issues of material fact and the moving party is entitled to judgment as a matter of law." *Id.*; V.R.C.P. 56(a).

¶ 10. We have long maintained the traditional, common-law approach to landowner liability, holding landowners to different duties of care depending on whether a land entrant is an invitee,

---

[1] He also argues that even under the duty owed to a licensee, summary judgment should have been denied. We do not reach that argument.

licensee, or trespasser. *Farnham*, 2003 VT 23, ¶ 9; *Cameron v. Abatiell*, 127 Vt. 111, 114, 241 A.2d 310, 312 (1968) ("The judicial approach to the problem of balancing interests of the occupier against the interests of a person coming on the premises was formulated during the course of the nineteenth century and still provides the point of departure for modern reasoning."); *Bottum's Adm'r v. Hawks*, 84 Vt. 370, 373-74, 384-85, 79 A. 858, 860, 864 (1911). In this decision, we do not address the duty owed by a landowner to a trespasser; we focus only on the distinctions we have drawn between licensees and invitees.

¶ 11. ▇ An invitee is one who "enters the land for the purpose of business dealings with the landowner." *Menard v. Lavoie*, 174 Vt. 479, 480, 806 A.2d 1004, 1006 (2002) (mem.); *Ball v. Melsur Corp.*, 161 Vt. 35, 43, 633 A.2d 705, 711 (1993). The landowner owes a duty of reasonable care to an invitee, such that the invitee "is not unnecessarily or unreasonably exposed to danger." *Ball*, 161 Vt. at 43, 633 A.2d at 711 (quotation omitted).

¶ 12. ▇ A licensee is one who merely "enters or remains on land with the consent of the landowner." *Menard*, 174 Vt. at 480, 806 A.2d at 1006; Restatement (Second) of Torts § 330. Licensees typically include social guests, as well as anyone else with a landowner's permission to enter land " 'other than a business visitor.' " *Manley v. Haus*, 113 Vt. 217, 220, 32 A.2d 668, 671 (1943) (quoting *Wool v. Larner*, 112 Vt. 431, 435, 26 A.2d 89, 92 (1942)). A licensee is entitled to a duty of care only to prevent "active or affirmative negligence by the landlord." *Menard*, 174 Vt. at 480, 806 A.2d at 1006. More fully stated, with respect to a licensee, a landowner is "not bound to keep the premises safe for her, or to warn her of their dangerous condition, [but] . . . owe[s] her the duty of active care to protect her from injuries from force negligently brought to bear upon her." *Watterlund v. Billings*, 112 Vt. 256, 260, 23 A.2d 540, 542 (1942).

¶ 13. Although we have continued to uphold the traditional common-law approach to premises liability, we long ago recognized that the distinction between invitees and licensees does not perfectly reflect social values. We noted in *Cameron* that "[t]he history of the law on the subject of landowners and licensees shows a tendency to whittle away a rule which no longer conforms to public opinion. The course of judicial decisions has been toward broadening the class of invitees or business guests." 127 Vt. at

115, 241 A.2d at 313. In a number of cases, the appellant has urged us to abandon the traditional categories, but we have avoided confronting the question directly. See *Menard*, 174 Vt. at 480, 806 A.2d at 1006 (declining to reach whether the higher standard of care applied, as that standard had been met); *Baisley v. Missisquoi Cemetery Ass'n*, 167 Vt. 473, 477, 708 A.2d 924, 926 (1998) ("Because of the unique facts of this case, . . . we need not address the vitality of our landowner-liability rules."); *Zukatis*, 165 Vt. at 301-02, 682 A.2d at 966 (declining to reach related issue regarding duty of care to trespassers); *Buzzell v. Jones*, 151 Vt. 4, 7, 556 A.2d 106, 109 (1989) (declining to modify common-law premises liability where parties did not brief the issue). In this case, the issue of whether we should have one common standard of care with respect to all persons on land with the permission of the landowner was considered below and was briefed by the parties in this Court. We reach the issue in this case.

¶ 14. ██ As we address our long-standing precedents, we are "not a slavish adherent to the principle of stare decisis, but we will not deviate from policies essential to certainty, stability, and predictability in the law absent plain justification supported by our community's ever-evolving circumstances and experiences." *State v. Carrolton*, 2011 VT 131, ¶ 15, 191 Vt. 68, 39 A.3d 705; accord *Smith v. Arbaugh's Rest., Inc.*, 469 F.2d 97, 105 (D.C. Cir. 1972) ("It is the genius of the common law that it recognizes changes in our social, economic, and moral life. . . . The principle of stare decisis was not meant to keep a stranglehold on developments which are responsive to new values, experiences, and circumstances."); C. Peters, *Foolish Consistency: On Equality, Integrity, and Justice in Stare Decisis*, 105 Yale L.J. 2031 (1996) (arguing generally from a theoretical perspective that stare decisis should never be seen as a barrier to justice). In summary, we will modify settled aspects of the common law only when plainly justified by evolving common standards.

¶ 15. Before examining whether common standards have evolved, we must understand the origins of our traditional common law. The history of common-law premises liability has been well chronicled. See, e.g., *Koenig v. Koenig*, 766 N.W.2d 635, 638-40 (Iowa 2009); R. Driscoll, Note, *The Law of Premises Liability in America: Its Past, Present, and Some Considerations for Its Future*, 82 Notre Dame L. Rev. 881, 885-95 (2006). The tripartite invitee-licensee-trespasser distinction was imported from

English common law "in an era where land ownership was paramount and the primary source of power, wealth, and dominance." *Koenig*, 766 N.W.2d at 638. Negligence law emerged later, with the reasonable person standard in tension with the traditional tripartite-classification system. *Id.* England was first to resolve this conflict, by statutorily abolishing the distinction between an invitee and a licensee. Driscoll, *supra*, at 885 (citing Occupiers' Liability Act of 1957, 5 & 6 Eliz. 2, c. 31 (Eng.)). Two years later the U.S. Supreme Court, sitting in admiralty, refused to adopt the licensee-invitee distinction at all. *Kermarec v. Compagnie Generale Transatlantique*, 358 U.S. 625, 630-32 (1959). That Court reasoned:

> The distinctions which the common law draws between licensee and invitee were inherited from a culture deeply rooted to the land, a culture which traced many of its standards to a heritage of feudalism. In an effort to do justice in an industrialized urban society, . . . modern common-law courts have found it necessary to formulate increasingly subtle verbal refinements . . . . [T]he classifications and subclassifications bred by the common law have produced confusion and conflict. . . . Through this semantic morass · the common law has moved, unevenly and with hesitation, towards imposing on owners and occupiers a single duty of reasonable care in all the circumstances.

*Id.* at 630-31 (footnote and quotation omitted).

¶ 16. As *Kermarec* predicted, a slight majority of state courts have now abolished the distinction between licensees and invitees.[2] See Restatement (Third) of Torts: Liability for Physical and Emotional Harm § 51, Reporter's Note, cmt. a, tbl. (2012) (listing state practices and citing cases for each state). Also as predicted, this movement has occurred in waves, mostly in the last decades of the last century. See *id.*, cmt. a (detailing waves of reform). For

---

[2] Reform states have split on whether to also abolish the distinction between trespassers and others. Compare *Rowland v. Christian*, 443 P.2d 561, 568 (Cal. 1968) (abolishing all distinctions), with *Peterson v. Balach*, 199 N.W.2d 639, 642 (Minn. 1972) (declining to reach issue of trespassers but abolishing distinctions governing licensees and invitees); see also *Koenig*, 766 N.W.2d at 639-40 (recounting the history of this split and listing cases). As noted earlier, we do not address the landowner's duty with respect to trespassers in this decision.

the last thirty-five years, reform states have included all of Vermont's closest neighbors. See *Poulin v. Colby Coll.*, 402 A.2d 846, 850-51 (Me. 1979); *Mounsey v. Ellard*, 297 N.E.2d 43, 51-52 (Mass. 1973); *Ouellette v. Blanchard*, 364 A.2d 631, 634 (N.H. 1976); *Basso v. Miller*, 352 N.E.2d 868, 872 (N.Y. 1976).

¶ 17. This history is strong evidence that common standards have evolved. We must examine, however, the bases for the licensee-invitee distinction in Vermont and whether these reasons still apply.

¶ 18. As in other states, Vermont's licensee-invitee distinction is firmly rooted in landowner privilege. *Cameron*, 127 Vt. at 114, 241 A.2d at 312-13 ("The English common law from which our American law is derived was part and parcel of a social system of which the landowners were the backbone. It was inevitable that in such an atmosphere supreme importance should be attached to proprietary interests."). It was, however, less rigid of a distinction when first adopted. It was first explained in some detail in *Bottum's Adm'r*:

> To keep within the established principles of the common law the question of liability in cases of this kind should be made to turn on the presence or absence of an invitation on the part of the owner. A naked trespasser or bare licensee enters for purposes of his own; he acts for his own benefit or convenience, and the owner gains nothing. But if invited, one enters not alone from motives of his own uncontributed to by act of the owner, but is induced, in some measure, by the conduct of the latter. The owner, in contemplation of law, gains something from the arrangement, though his advantage need not be a pecuniary one. The invitation carries with it some measure of assurance of safety, which the owner must make good, by the exercise of active care if necessary. Without an invitation, express or implied, no duty of active care arises. Such invitation is implied whenever one makes such use of another's premises or something found thereon as the owner intends he shall, or such as he is reasonably justified in understanding the owner intended. Neither silence, acquiescence, nor permission, however, standing alone, is sufficient to establish an invitation. A license may thus be created, but not an invitation.

84 Vt. at 384, 79 A. at 864 (citations omitted). Under this description, a social invitee could be an invitee for purposes of the distinction. Over time, an invitee became defined as a business invitee, and a social invitee was classified as a licensee. That definition first became clear in *Coburn v. Village of Swanton*, which narrowed the definition of invitee so it no longer applied to social guests. 95 Vt. 320, 325-26, 115 A. 153, 156 (1921). Thereafter, in *Wool*, we adopted the rules as expressed in the Restatement of Torts §§ 330-332 (1934), which reinforced the narrow definition. 112 Vt. at 435, 26 A.2d at 92.

¶ 19. The arbitrariness, rigidity and complexity of the distinctions that have developed to separate licensees from invitees is one of the reasons many courts have abandoned the classifications. As we noted above, the U.S. Supreme Court refused to adopt the classifications for admiralty cases in part to avoid the "semantic morass." *Kermarec,* 358 U.S. at 631. The New Hampshire Supreme Court noted that "a jury must have been puzzled when told that the friend you invited into your home was not an invitee but the salesman who entered your home and sold you unwanted magazines was an invitee." *Ouellette*, 364 A.2d at 634-35; see also *Mounsey*, 297 N.E.2d at 51 ("[T]he visitor's safety does not become less worthy of protection by the law because he is a social guest and not a business invitee.").

¶ 20. This case is a good example of the arbitrariness · and rigidity of the common-law distinctions. Before he fell into the storm drain, plaintiff parked his vehicle where some employees parked and where customers could park. Thus, BPE owed a duty of reasonable care to others to keep that area safe; it was entirely by chance that it was plaintiff who fell in the storm drain. See *Poulin*, 402 A.2d at 850-51 ("We can find no reason for denying a plaintiff the opportunity to recover damages for injuries sustained due to the negligence of a landowner merely because the former was a licensee and not an invitee.").

¶ 21. Another element of arbitrariness is introduced by plaintiff's interest in purchasing a tractor and generator from BPE. Plaintiff had discussed this interest with BPE's president in the past. If he had done so again on the day he was injured, he would be in a better position to argue that he was a business visitor and entitled to a standard of reasonable care. Without having that conversation, he was a mere licensee — as found by the trial court — and entitled to protection only from active negligence.

Tying a lawful visitor's degree of protection from harm to his or her recent expression of interest in a defendant's wares makes little sense. Taken to its logical extreme, anyone entering another's land should immediately express interest in purchasing something as a means of insuring his or her safety on the premises. As noted by reform courts before us, "[r]easonable people do not ordinarily vary their conduct depending upon such matters." *Rowland*, 443 P.2d at 568.

¶ 22. Even though as a small state we have few appellate decisions on point, there are examples of great complexity. For example, in *Farnham*, we concluded that the plaintiff — who was visiting registered guests in the defendant's campground and was injured in a car accident while on the premises — might properly be categorized as any of the three types of land entrant, depending in part on "whether those paying social calls upon registered guests at defendant's campground are required to register, or whether defendant allows those individuals to enter the campground freely." 2003 VT 23, ¶ 10. In *Robillard v. Tillotson*, 118 Vt. 294, 300, 108 A.2d 524, 527-28 (1954), the plaintiff was found to be a licensee because she was walking on the defendant's premises to reach her husband's car and the husband, while formerly an invitee, had become a licensee by staying to wait for the wife.

¶ 23. The more important considerations are the protections we accord to landowners and the weight we assign to the safety of persons while they are on the land of another. As our decision in *Cameron* reflects, public opinion about these considerations has greatly changed since we adopted the current law of premises liability with respect to licensees and invitees. The common law arose when "the presumption [was] that landowners generally were free to act as they pleased within the confines of their own property." *Koenig*, 766 N.W.2d at 638. We are now in a different legal context, where control of land use for the protection of the public is pervasive. We no longer can say that "supreme importance should be attached to proprietary interests." *Cameron*, 127 Vt. at 114, 241 A.2d at 313.

¶ 24. At the same time, the value we place on human health and safety has increased. The status classifications arose in England before negligence liability was generally established. *Koenig*, 766 N.W.2d at 638. Since the status classifications were adopted, we have significantly expanded the use of tort liability to protect

health and safety. Thus, the lower standard of care for landowners in relation to licensees is an anomaly in modern tort law. Decisions from our neighboring states have cited the importance of this factor. See *Poulin*, 402 A.2d at 850 (" '[T]o focus upon the status of the injured party . . . in order to determine the question whether the landowner has a duty of care, is contrary to our modern social mores and humanitarian values.' " (quoting *Rowland*, 443 P.2d at 568)); *Mounsey*, 297 N.E.2d at 51 ("We can no longer follow this ancient and largely discredited common law distinction which favors the free use of property without due regard to the personal safety of those individuals who have heretofore been classified as licensees."); *Ouellette*, 364 A.2d at 632 ("[C]onsiderations of human safety within an urban community dictate that the landowner's relative immunity, which is primarily supported by values of the agrarian past, be modified in favor of negligence principles of landowner liability." (quotation omitted)).

¶ 25. These considerations clearly persuade us that a change in the law is needed. We recognize that some would argue that the necessary change should come, if at all, from the Legislature and not this Court. E.g., *Rowland*, 443 P.2d at 569 (Burke, J., dissenting) ("Sweeping modifications of tort liability law fall more suitably within the domain of the Legislature . . . ."). State legislatures certainly have the power to modify the common law at any time, as they did in Colorado by overturning the Colorado Supreme Court's opinion that abolished the tripartite distinctions. See Colo. Rev. Stat. § 13-21-115, superseding *Mile High Fence Co. v. Radovich*, 489 P.2d 308 (Colo. 1971). However, maintenance and modernization of the common law is this Court's responsibility until and unless the Legislature decides otherwise. We conclude that this is an issue on which the need for modernization is so strong that we must act.

¶ 26. ▮▮ ▮▮ The considerations above induce us to change our common-law rule and hold that a landowner owes the same duty of care to a licensee as to an invitee.[3] We determine, as the U.S. Supreme Court did half a century ago, that the standard of

---

[3] Plaintiff urges us to adopt a narrower stance and apply our holding only to commercial landowners and occupiers — as suggested by the concurrence to *Arbaugh's Restaurant* — rather than to all landowners and occupiers. 469 F.2d at 107-08 (Leventhal, J., concurring). We see no reason to add this complication as to categories of landowners at a time when we are simplifying the law as to categories of land entrants. See generally Comment, *Smith v. Arbaugh's Restau-*

"reasonable care in all the circumstances" will better reflect our common expectation of the duty of care owed by landowners and occupiers to all lawful entrants. All other reform courts have adopted reasonable care as the standard for property owners towards lawful entrants. See Restatement (Third) of Torts: Liability for Physical and Emotional Harm § 51, Reporter's Note, cmt. a, tbl. (collecting cases); see, e.g., *Mounsey*, 297 N.E.2d at 49-50 (explaining the application of the long-established reasonable-care standard to the context of premises liability). As one court explained: "The duty required of a landowner . . . as to licensees and invitees is no more and no less than that of any other alleged tortfeasor, and that duty is to use reasonable care for the safety of all such persons invited upon the premises, regardless of the status of such individuals." *Peterson v. Balach*, 199 N.W.2d 639, 647 (Minn. 1972). An entrant's status, no longer controlling, is simply "one element, among many, to be considered in determining the landowner's liability under ordinary standards of negligence." *Id.* In making this change applicable to all lawful land entrants, we reiterate that we make no determination as to the duty owed to trespassers at this time. The rule as to trespassers that we recently stated in *Farnham* — that "a landowner owes no duty to protect a trespasser from injury caused by unsafe or dangerous conditions" — remains good law in Vermont. 2003 VT 23, ¶ 8 (citing *Buzzell*, 151 Vt. at 6, 556 A.2d at 108).

¶ 27. ▮ The trial court in this case determined that the traditional standard of care applicable to a licensee governed and granted summary judgment to BPE under that standard. We have now changed the applicable standard to require reasonable care under all the circumstances. We have described the standard of reasonable care in common-law negligence as follows: "Whether a defendant is negligent depends on whether his or her action was objectively reasonable under the circumstances; that is, the question is whether the actor either does foresee an unreasonable risk of injury, or could have foreseen it if he conducted himself as a reasonably prudent person." *Endres*, 2008 VT 124, ¶ 13 (quotation omitted). Under our common law, "the degree of care that a

---

*rant, Inc., and the Invitee-Licensee-Trespasser Distinction*, 121 U. Pa. L. Rev. 378 (1972) (discussing and rejecting Judge Leventhal's *Arbaugh's Restaurant* concurrence as overly complex and unrealistic). Other reform states have not done so. The commercial or residential nature of the land may be considered by the fact finder in the reasonableness analysis along with everything else.

reasonably prudent person would exercise, and thus the scope of the legal duty of ordinary care, is determined by the foreseeability of the consequences of an individual's acts or omissions." *Edson v. Barre Supervisory Union #61*, 2007 VT 62, ¶ 10, 182 Vt. 157, 933 A.2d 200.

¶ 28. ■ In this case, based primarily on deposition testimony, plaintiff has demonstrated sufficient evidence to raise a genuine question of material fact for the jury regarding the foreseeability, to BPE, of plaintiff suffering harm from the open storm drain. For example, the man who plowed the BPE lot the day before plaintiff's accident testified that he used to check for dislodged drain covers for the first few years he worked for BPE, but eventually stopped because no cover was ever dislodged. He also testified that he used to dislodge the caps on underground gas-storage tanks when plowing for gas stations in the 1980s. He stated that his initial precaution of checking the storm drain covers was "common sense," and that he knew that the "ground moves," for instance as a result of frost heaves. Two other regular snowplow drivers for BPE testified that they checked after plowing to confirm that they had not dislodged any storm drain covers. BPE's general manager testified that he noticed the storm drain cover rocked in place when he drove over it and that there was some deterioration in the concrete ring around the storm drain cover. Plaintiff was a known visitor to BPE and had parked in the same spot many times before. Taken together, this evidence creates a sufficient question of fact as to whether the uncovered storm drain was reasonably foreseeable to reach the jury under our new standard of care.

*Reversed and remanded for further proceedings not inconsistent with this opinion.*