*Bernasconi v. City of Barre: Hope Cemetary*, 663-10-15 Wncv (Teachout, J., Nov. 22, 2017)
[The text of this Vermont trial court opinion is unofficial. It has been reformatted from the original. The accuracy of the text and the accompanying data included in the Vermont trial court opinion database is not guaranteed.]

## STATE OF VERMONT

**SUPERIOR COURT**                                    **CIVIL DIVISION**
**Washington Unit**                                    **Docket No. 663-10-15 Wncv**

**JAY BERNASCONI**
      **Plaintiff**

      **v.**

**CITY OF BARRE: HOPE CEMETERY**
      **Defendant**

### DECISION
### The City's Motion for Summary Judgment

Plaintiff Jay Bernasconi claims that while visiting the Hope Cemetery in Barre, which is owned and operated by the City of Barre, he stepped into a hole obscured by grass, fell, and injured his knee. Defendant City of Barre seeks summary judgment claiming that it has municipal sovereign immunity to such a claim and that the record is insufficient to permit any inference of negligence. Mr. Bernasconi argues that there is no immunity and the facts regarding negligence should be resolved by a jury.

For summary judgment purposes, there is no dispute that Mr. Bernasconi, while visiting the cemetery, stepped into a deep hole that was obscured by grass and fell.

*Municipal sovereign immunity and 24 V.S.A. § 901a*

The City argues that it has municipal sovereign immunity to Mr. Bernasconi's claim because the Cemetery is akin to a park and municipal parks are governmental, rather than proprietary, undertakings of Vermont municipalities. Mr. Bernasconi responds that his claim is a tort claim against a municipal employee, brought against the City pursuant to 24 V.S.A. § 901a, and sovereign immunity is statutorily waived. He also argues that, in any event, cemeteries are proprietary undertakings to which common law municipal sovereign immunity does not apply.

Subject to some limitations not relevant here, 24 V.S.A. § 901a(b) precludes direct actions against municipal employees acting within the scope of their authority for, among other things, personal injuries. It requires that such claims be brought against the municipality, which may raise any defense that would have been available to the employee, including individual immunity defenses such as qualified immunity, but which may not raise any defense that would not have been available to the employee, including "municipal sovereign immunity." *Id*. § 901a(c).

Section 901a does not apply to this case. Before § 901a was enacted in 2003, municipal employees, unlike State employees, generally had personal liability for their torts without any statutory protection provided by their employing municipality. See, e.g., *Hudson v. Town of E.*

*Montpelier*, 161 Vt. 168, 178–79 (1993) ("In the absence of the public duty doctrine or a statute specifically limiting liability, a municipal employee who commits a tortious act is personally liable to the injured person, even though the employee is engaged in a governmental function and the municipality is exempt under the doctrine of sovereign immunity."). As the *Hudson* Court explained:

> If the Legislature determines that no municipal employees required to engage in work-related activities affecting the safety of many people should be held personally liable for their negligence in undertaking ministerial tasks within the scope of their employment, it may require all municipalities to indemnify all of their employees or to purchase insurance in order to protect their employees from tort judgments, or it may declare suits against municipalities the exclusive remedy for those injured by municipal employees acting within the scope of their employment.

*Id.* at 179. The legislature responded 10 years later by adopting § 901a, a scheme requiring suits against municipalities, not municipal employees, as exclusive remedies.

In such a case, the municipality may not assert municipal sovereign immunity in defense of the claim against the employee, but neither does it lose its sovereign immunity in relation to any claim brought directly against it. In other words, § 901a does not do away with municipal sovereign immunity altogether. It merely preserves liability in favor of a tort claimant in relation to a claim that otherwise could have been properly brought against the municipal employee directly.

Mr. Bernasconi has not identified any such claim in this case. While his complaint superficially includes two claims, negligence and premises liability, they describe the same tort. Mr. Bernasconi's claim is that the grounds of the Cemetery included a concealed, dangerous condition—a hole in the ground—that injured him. This is a basic premises liability claim.

The City argues that a premises liability claim may be asserted against the owner of the property only. That is not so, at least as a general matter. Generally, a premises liability claim may be brought against the owner or possessor of the land, and liability *may* extend beyond that. See, e.g., Restatement (Second) of Torts § 383 ("One who does an act or carries on an activity upon land on behalf of the possessor is subject to the same liability, and enjoys the same freedom from liability, for physical harm caused thereby to others upon and outside of the land as though he were the possessor of the land."); see also *Garafano v. Neshobe Beach Club, Inc.*, 126 Vt. 566, 575 (1967) ("liability depends upon control, rather than ownership, of the premises").

However, the City is correct that Mr. Bernasconi has not alleged any negligence by any particular employee. No specific employee is alleged to have been negligent. He focuses instead on the fact that, collectively, no one did anything to mark or fix the hole before he fell in it. That is a claim asserted against the City directly as owner and controller of the property. It is not a negligence claim brought against an individual employee. Thus, § 901a is not relevant and there is no need to consider the City's defense of municipal sovereign immunity with respect to a

2

claim based on employee negligence.

The City's immunity argument fails, however, for a different reason. The existence of municipal sovereign immunity depends on the governmental–proprietary dichotomy that, in Vermont, still is used to determine the breadth of a municipality's sovereign immunity. See *Hillerby v. Town of Colchester*, 167 Vt. 270, 272 (1997) ("Traditionally, courts have held municipalities liable only where the negligent act arises out of a duty that is proprietary in nature as opposed to governmental.").

Although there appear to be no published decisions on this issue in Vermont, as numerous out of state cases have held, a municipality owns and operates a cemetery in its proprietary, not governmental, capacity. The leading municipal law treatise summarizes this noncontroversial principle as follows: "A city operating a cemetery functions in its proprietary capacity." 18A McQuillin Mun. Corp. § 53:144 (3d ed.). It thus retains no municipal sovereign immunity to claims arising out of the operation of a cemetery. The City appears to accept this. It does not argue that cemeteries fall within the municipality's governmental capacity.

It argues instead that Hope Cemetery is no ordinary cemetery. Really, it argues, Hope Cemetery is a "sculpture garden" or park and it should be so treated for sovereign immunity purposes. Contrast *Lemieux v. City of St. Albans*, 112 Vt. 512, 514–15 (1942) (construction of a public playground is a governmental function) with *Marshall v. Town of Brattleboro*, 121 Vt. 417, 425 (1960) (operation of a ski tow rope in a public park is not).

The court need not sort out the legal status of "parks" vis-à-vis Vermont law on municipal sovereign immunity in this case. There is no question that Hope Cemetery is a cemetery. The City argues that because it attracts tourists it is unique and should be treated like a park. The City offers no authority for this argument and has not established in any meaningful way that a trier of fact could reasonably find that Hope Cemetery somehow has lost its principal identity as a cemetery and now is a "park" instead.

The operation of a cemetery falls within the City's proprietary capacity. The City therefore has no municipal sovereign immunity to Mr. Bernasconi's claim.

*Negligence/ Premises Liability*

The issue thus turns to negligence. The City argues that Mr. Bernasconi has come forward with no meaningful evidence of negligence. Mr. Bernasconi argues that the facts are disputed and should be presented to the jury.

Generally speaking, landowners are not strictly liable to lawful entrants on their property. Rather, they are charged with the duty to act with "reasonable care in all the circumstances." *Demag v. Better Power Equipment, Inc.*, 2014 VT 78, ¶ 26, 197 Vt. 176. The *Demag* Court elaborated:

> "Whether a defendant is negligent depends on whether his or her action was objectively reasonable under the circumstances; that is, the question is whether

3

the actor either does foresee an unreasonable risk of injury, or could have foreseen it if he conducted himself as a reasonably prudent person." Under our common law, "the degree of care that a reasonably prudent person would exercise, and thus the scope of the legal duty of ordinary care, is determined by the foreseeability of the consequences of an individual's acts or omissions.

*Id.* at ¶ 27 (citations omitted). Plaintiff does not allege that the City's agents created the hole into which he fell. He asserts that it was a deep hole, that the City's agents should have been aware of it, and that they nevertheless did not mark it or cover it to make it safe.

The question is whether Plaintiff has presented sufficient evidence to go to the jury on the issue of whether the City's agents should have been aware of the hole. Plaintiff's evidence is that the surface area of the hole was approximately the size of Mr. Bernasconi's foot. It was deep, but it was obscured by grass and not obvious to an ordinary passerby, as Mr. Bernasconi readily testified. There is no evidence that Hope Cemetery's groundskeepers were actually aware of the hole before Mr. Bernasconi fell in it.

It is incumbent on a plaintiff to develop and marshal evidence to the effect that under these circumstances the groundskeepers *should* have been aware of it. The jury's ability to reasonably draw that inference from admissible evidence is necessary to the claim that failing to make the hole safe was negligent. As one treatise explains:

> The fact that an entrant on property falls and is injured is not itself evidence of negligence and does not give rise to an inference of negligence. . . . Negligence consists in the doing of something a reasonable person would not do under the same or similar circumstances or the failure to do something a reasonable person would do under like circumstances.

2 Louis A. Lehr, Jr., Premises Liability 3d § 36:1 (2017 ed.).

There is no evidence that the hole was in existence for such a long time prior to the fall that the groundskeepers reasonably should have been aware of it. In opposition to summary judgment, Mr. Bernasconi alleges in an affidavit that the hole was deep, and a hole so deep would have taken a long time to develop. This is speculation of a layperson, however, and would be insufficient to support a finding of fact to that effect by the jury. There is no meaningful evidence in the record on how long the hole may have existed before Mr. Bernasconi fell in it.

Mr. Bernasconi also argues that the groundskeepers should have been aware of the hole because they knew that holes sometimes appeared on the cemetery's grounds and should have been seeking them out more diligently. There is some evidence in the record that holes sometimes would develop on the Cemetery grounds and, when discovered, the groundskeepers would act to mark them, cover them up, or otherwise make them safe. There was no evidence, however, that could support a finding by the jury that dangerous holes developed so frequently that the groundskeepers should have had some more diligent protocol in place to find them.

4

Counsel for Mr. Bernasconi offered at oral argument that there also was evidence that holes sometimes developed after heavy rainstorms. He suggested that evidence of a relevant rainstorm may be presented to the jury at trial but conceded that no evidence of any such rainstorm currently exists. This was argument and not admissible evidence and it is an insufficient basis upon which to oppose summary judgment. "The nonmovant is not entitled to a trial on the basis of a hope that he can produce some evidence at that time." 10A Wright & Miller, et al., Federal Practice & Procedure: Civil 4th § 2727.2. Evidence relied upon for summary judgment purposes must be in the record.

As far as the record goes, there is no evidentiary basis for a finding on how long the hole existed, whether the groundskeepers should have known about it, and thus whether the failure to make it safe presents any triable issue of negligence.

Without evidence of reasonable notice of the unsafe condition that affected Mr. Bernasconi, or any other evidence that the groundskeepers should have done something that they did not do, there is no triable issue of negligence on the part of the City. To rule otherwise on this record would be to impose strict liability on the City, whereas as a matter of law, premises liability is based on ordinary negligence principles.

## ORDER

For the foregoing reasons, the City's motion for summary judgment is granted.

Dated at Montpelier, Vermont this 21st day of November 2017.

_____
Mary Miles Teachout
Superior Judge